4 P  71|
217  608|

OCTOBER AND NOVEMBER TERM, 1884, No. 129.  NOVEMBER 3, 1884.

## Hespenheide's Appeal.

1. The Pittsburgh, Fort Wayne and Chicago railroad, which crossed plaintiff's land, was leased by the Pennsylvania Railroad Company, which subsequently assigned the lease to the Pennsylvania Company. The Pennsylvania Company, under its act of incorporation, had the power "to enter and occupy the lands of individuals   *   *   * for the purpose of erecting, constructing, maintaining, or managing any public works," &c.  *Held*, that as the right of eminent domain is, in terms, conferred upon the Pennsylvania Company by its charter, it has the right to take plaintiff's land for the purpose of widening the Pittsburgh, Fort Wayne and Chicago railroad.

2. *Semble, per Master.*—The right to exercise the power of eminent domain does not pass to the lessee in the absence of clear statutory provision expressly authorizing it.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, and CLARK, JJ.

STERRETT and GREEN, JJ., absent.

Appeal of H. F. W. Hespenheide from the decree of Common Pleas, No. 1, of *Allegheny County*, dismissing complainant's bill and confirming the master's report.

Bill in equity, by H. F. W. Hespenheide, against the Pennsylvania Company, lessees, operating the Pittsburgh, Fort Wayne and Chicago railway, setting forth:

*First.* That he is the owner in fee of a certain tract of land situate in Killbuck township, county of Allegheny, and State of Pennsylvania.

*Second.* The Pittsburgh, Fort Wayne and Chicago Railway Company, successor of the Ohio and Pennsylvania Railroad Company, by articles of merger and consolidation concluded 2d day of July, A. D. 1856, became the owner of and operated a line of railroad over and across the property of complainant (said railroad being of double track) until the date of lease hereafter mentioned.

*Third.* That the Pennsylvania Company was duly incorporated by the Legislature of Pennsylvania on the 7th day of April, A. D. 1870:  P. L., 1870, page 1,025, a copy of which act is attached hereto and made part hereof.

*Fourth.* That said Pittsburgh, Fort Wayne and Chicago Railway Company, on the 7th day of June, 1869, made, executed, and delivered to the Pennsylvania Rail-

road Company (also a corporation of Pennsylvania) a lease of its railroad and property, and under such lease the said Pennsylvania Railroad Company became entitled to operate said railway.

*Fifth.* That on the 1st day of April, A. D. 1871, the Pennsylvania Railroad Company, by assignment of that date, transferred and set over the said lease to the said defendant, the Pennsylvania Company, and since that date the said railway has been run and operated by the said Pennsylvania Company as lessee.

*Sixth.* That by and under the statutes of the State of Pennsylvania authorizing the leasing of connecting lines of railroads, no power of eminent domain existing in the lessor can be transferred to or be exercised by the lessee, and the only right that passes is the right to operate the railroad, as your orator is informed and believes.

*Seventh.* That on the . . day of . . . , A. D. 1882, the said defendant company, claiming the right to act under the provisions of an act of assembly, entitled "An act to enable railroad companies to straighten, widen, deepen, and otherwise improve their lines of railroad," &c., approved 17th of March, 1869, located, marked, and established an additional right of way along said railway, and outside the right of way owned by said lessor, and is now attempting to condemn and take the same by proceedings under the eleventh section of the act of Assembly approved 19th February, 1849, and, among others, has located an additional right of way over the property of complainant, and, in pursuance of the act of the 9th day of April, 1856, has filed a bond covering the location over the property of complainant in the Court of Common Pleas, No. 1, of Allegheny county, which bond has been approved and filed; and the defendant company, by its engineers, contractors, and workmen, has entered upon and taken possession of said property, and are about to make the road-bed for the additional track sought to be constructed under the act of Assembly aforesaid.

*Eighth.* Your orator is informed and believes that said defendant company, neither as lessee of said Pittsburgh, Fort Wayne and Chicago Railway Company, nor under its own act of incorporation, has the right to exercise the power of eminent domain, and is, therefore, a trespasser upon the lands of your orator, and unless restrained by writ of injunction, your orator will be irremediably damaged.

And praying, *inter alia*, the Court to issue an injunc-

[Hespenheide's Appeal.]

tion restraining the defendant company, its contractors, and workmen from interfering with the property of complainant, and to decree that said Pennsylvania Company has no right to exercise the power of eminent domain as the lessee of the Pittsburgh, Fort Wayne and Chicago railway, nor any such right under its own act of incorporation.

The answer of defendant set forth :

*First.* The averments of the first five paragraphs of said bill are true. Said lease, however, of the Pittsburgh, Fort Wayne and Chicago railroad, referred to in the fourth paragraph of said bill, includes, in addition to the railroad and property therein named, all rights, privileges, and franchises therein named, relating to the said demised railway, or to the construction, maintenance, use, and operation of the same. Defendant prays that the said lease may be referred to as part of this answer, to all intents and purposes, and with like effect, as if the same were embodied at length.

*Second.* The averment of the sixth paragraph of said bill defendant denies, and charges that the contrary thereof is true.

*Third.* The averments of the seventh paragraph of said bill are true, except in this, that the defendant company has not located, marked, and established an additional right of way along the Pittsburgh, Fort Wayne and Chicago railway, and outside of its right of way, either upon the property of the plaintiff or upon any other property. Nor is it now attempting to condemn and take from the plaintiff, or any other party, an additional right of way. The fact is, that the defendant company, under competent authority, is simply straightening, widening, enlarging, and otherwise improving the Pittsburgh, Fort Wayne and Chicago railway, pursuant to a resolution of the board of directors of defendant company duly passed, wherein is expressed the *bona fide* opinion of the board of directors of defendant company that such improvement of said line is necessary for better securing the safety of persons and property, and increasing the facilities and capacity for the transportation of traffic thereover. And defendant further shows that the necessities of a constantly increasing business over said railway renders absolutely essential the making of said improvements in the interest of the public, and that in the absence thereof said defendant company cannot answer the purposes of its creation, and fulfill the obliga-

tions by law imposed upon both it and the said Pittsburgh, Fort Wayne and Chicago Railway Company. And defendant company further shows that it is under obligations to make said improvements by reason of the terms of the said lease, hereinbefore referred to, wherein and whereby it is (*inter alia*) provided that said defendant company, at the expiration thereof, shall deliver up and surrender to the said Pittsburgh, Fort Wayne and Chicago Railway Company the said demised railway and premises in at least as good order and condition as the same were when delivered under said lease, and with such conditions, betterments, and improvements as shall have been made thereto.

*Fourth.* The averments of the eighth paragraph of said bill defendant company denies, and avers that both as lessee of the said Pittsburgh, Fort Wayne and Chicago railway, and under its own act of incorporation, it has the right to exercise the power of eminent domain.

The Court referred the case to N. S. Williams, as master, who found, *inter alia*, the following facts:

That the defendant company, in pursuance to a resolution passed by its board of directors, dated November 30, 1881, are now engaged in carrying out certain improvements on the line of the Pittsburgh, Fort Wayne and Chicago railroad between Allegheny City and Dixmont station; said improvements consist, *inter alia*, "in the enlarging of all present outer depot yards and shop facilities, the construction of two additional tracks from the present outer depot to Dixmont, the providing of local station facilities at nearly all the local stations, additional side-tracks, and the re-location of nearly all the station-houses for the better safety of the passengers in operating the four-track system of road," and to provide facilities to accommodate the increased traffic of the road.

The taking of plaintiff's property is in connection with this improvement. The strip between the present road-bed and the river is to be used in straightening the line of the road and for additional tracks; the triangular piece, on the hillside of the road, is to be used in connection with what is left after the line is straightened for a station-house at that place, so that with the old right of way, and when the present appropriation from plaintiff is completed, the defendant company at that point will have four main tracks, station-house and grounds, a side-track for local accommodation, a tram-way for approach on side-tracks, station platforms, and an approach to the

station from the west side across the creek. That these improvements are necessary in order to accommodate the increased traffic of the road, and that this appropriation is necessary and essential to the carrying out of these improvements. That at the time of the lease above referred to the Pittsburgh, Fort Wayne and Chicago railroad was a double-track road between Allegheny City and Dixmont, and that when this appropriation is completed it will be a four-track road between these points. That so far as plaintiff is concerned it will virtually amount to the construction of a new road; the original right of way of said road being sixty-six feet in width, and when this appropriation is made it will be one hundred and twenty-one feet in width on the eastern boundary of plaintiff's land, and on the western boundary about one hundred feet at grade. That the Pittsburgh, Fort Wayne and Chicago railroad connects at Pittsburgh with the Pennsylvania railroad. That so far as the terms of the lease made by the Pittsburgh, Fort Wayne and Chicago Railroad Company to the Pennsylvania Railroad Company, dated June 7, 1869, to take effect July 1, 1869, are concerned, they are sufficiently ample to cover this contemplated improvement, since it is therein provided, *inter alia*, "including also all locomotives, &c., and all rolling-stock and equipment belonging to the said party of the first part, and all rights, privileges, and franchises connected with or relating to said demised railways or either thereof, or to the construction, maintenance, use, or operation of the same: *Provided always, however*, That nothing herein contained shall operate to grant or demise, or be construed to include the franchises to be a corporation," &c. Article fifth of said lease being as follows: "The party of the second part shall and will, at its own proper cost and expense, and without deduction from the rent aforesaid, operate and run the said demised railways, at all times during the said term, in the same manner as the party of the first part, as the owner thereof or otherwise, is now, or shall, or may at any time hereafter be required by law to do, and the said party of the second part shall and will, at its own proper cost and expense, and without deduction from the rent aforesaid, at all times during the said term, maintain, preserve, and keep the railways and premises hereby demised and every part of the same in thorough repair and working order and condition, and supplied with rolling-stock and equipment, so that the business of said demised railways shall be preserved, encouraged, and developed; and that the same shall be at

all times done with safety and expedition, and the public be accommodated in respect thereto with all practicable conveniences and facilities, and that all future growth of such business, as the same may arise or be reasonably anticipated, shall be fully provided for and secured. And the party of the second part hereby promises and agrees to and with the party of the first part that the said party of the second part shall and will, at its own proper cost and expense, and without deduction from the rent aforesaid, from time to time whenever needed during the term aforesaid, do or cause to be done, to and upon the said demised railways and premises, any and all repairs, replacements, and renewals, and, also, in manner expressed in the sixteenth article of these presents, any and all additions, constructions, and improvements, which may be reasonably required for the purposes aforesaid, and provide thereon such rolling-stock and equipment, and other facilities, as shall or may be reasonably required for the purposes aforesaid. And that the said party of the second part shall and will use all reasonable efforts to maintain, develop, and increase all the business of the said railways."

Article sixteenth of said lease provides, *inter alia*, that "the party of the first part hereby agrees that for the purpose of enabling the party of the second part to meet the obligations of the party of the first part to the public, by making, from time to time, such improvements upon and additions to the said Pittsburgh, Fort Wayne and Chicago railway, in the extension of facilities for increased business, by additional tracks and depots, shops and equipments, and the substitution of stone or iron bridges for wooden bridges, or steel rails for iron rails, &c."

Article twentieth of said lease provides, *inter alia*, "that the said party of the second part hereby covenants, promises, and agrees to and with the said party of the first part, that at the end of the term, or other sooner determination of this lease, the said party of the second part shall re-deliver and surrender up to the said party of the first part, its successors and assigns the said demised railways and premises, in at least as good order and condition as the same shall be delivered to the said party of the second part under this lease, and with such additions, betterments, and improvements as shall have been made thereto, &c."

The master also found that the Pennsylvania Company had express authority to take an assignment of the lease, section third of its charter providing, *inter alia*, as fol-

lows: "To assume, to become responsible for, execute, and carry out any contracts, leases, or sub-leases, made by any company to or with any other company or companies, individuals, or firms whatsoever." The defendant company may, therefore, be considered as lessee, and it does not become necessary to consider the assignment itself; sufficient to say that it bears date June 29, 1884, and provides, *inter alia*, that the defendant company is to operate or run the said railway in the same manner as the said Pittsburgh, Fort Wayne and Chicago railway, as the owner thereof, or otherwise, is or shall or may at any time hereafter be required to do.

The master reported, *inter alia*, as follows : "The sole question raised by the bill, answer, and evidence in this case is whether the defendant company, either (1) as assignee of the lease made by the Pittsburgh, Fort Wayne and Chicago Railroad Company, or (2) by virtue of its own act of incorporation, possesses the power of eminent domain ? The plaintiff here contends that the defendant company does not, either as assignee or in its own right, possess the right to exercise the power of eminent domain.

"That the Pittsburgh, Fort Wayne and Chicago Railway Company would have had authority to make this appropriation had it not executed the lease hereinbefore mentioned, cannot be denied, since the act of March 17, 1869.

"That the power of eminent domain passes to the lessee, is said to have been decided in the case of Sly *v.* the Pennsylvania Railroad Company, 15 P. F. Smith, page 209, wherein it is said : ' By virtue of a simple lease, therefore, an artificial as well as a natural person would succeed to all the rights, liberties, and franchises, and subject to all the limitations imposed on the lessor. The lessee is the assignee, for a term or period, of the lessor, his bailiff to hold possession for him : Co. Litt., page 239 b, Note 2. It is so as to natural persons, why not as to corporations, unless the law has made a difference when it authorized the lease ? The lessee of a railroad corporation must necessarily be bound by all the prohibitions and limitations contained in the charter of the lessor, and, on the other hand, must be entitled to all the rights and franchises. The Legislature, by authorizing another corporation to take such lease, have, by necessary implication, conferred them.'

"In this case, the question was mainly the right of the lessee to charge higher rates for the conveyance of passen-

[Hespenheide's Appeal.]

gers than the charter of the lessee authorized it to do, and
the Court held that this was to be determined by the
charter of the lessor, and, as there was no restriction in
the lessor's charter, the Court held that the restriction in
the lessee's charter did not apply. Under the acts of As-
sembly above cited, authorizing companies owning con-
necting railroads to enter into contracts or leases in respect
to the use, management, or operation of any such rail-
road, it would clearly seem sufficient to give the lessee
power to fix a tariff of rates where there was nothing in
the lessor's charter to the contrary. While the words
used by the Court are very broad and comprehensive, the
master is of the opinion that they were used in regard to
the case under consideration, and, in effect, simply mean
that such rights or franchises as the lessor is expressly,
or by necessary implication, authorized to transfer, pass to
the lessee ; that, under the authorities above cited. and
under the following, to wit : Cooley's Constitutional Lim-
itations, page 396, and 21 Pennsylvania State Reports,
page 22, nothing short of express authority, or authority
by implication, will authorize a delegation of the right of
eminent domain. In the case of the Pennsylvania Rail-
road *v.* Canal Commissioners, 21 Pennsylvania State, page
22, Black, C. J., in delivering the opinion of the Court,
says, *inter alia :* ' It may be that the privilege which the
relators claim might arise by implication out of their
charter or some other of the acts cited by their counsel,
if we were at liberty to give to them the broad construc-
tion which we sometimes apply to other laws of a differ-
ent character. But corporate powers can never be created
by implication or extended by construction. No privilege
is granted unless it is expressed in plain and unequivocal
words, testifying the intention of the Legislature in a
manner too plain to be misunderstood. When a State
means to clothe a corporate body with a portion of her own
sovereignty, and to disarm herself to that extent of the
powers which belong to her, it is so easy to say so that we
will never believe it to be meant where it is not said. And
words of equivocal import are so easily inserted by mis-
take or fraud, that every consideration of justice and pol-
icy requires that they should be treated as nugatory when
they do find their ways into the enactments of the Legis-
lature. In the construction of a statute, to be in doubt is
to be resolved, and every resolution which springs from
doubt is against the corporation. This is the rule sus-
tained by all the courts in this country and in England ;
no other has ever received the sanction of any authority

[Hespenheide's Appeal.]

to which we owe much deference. The privileges of the Pennsylvania railroad may be too rigidly restricted. If the usefulness of the company would be increased by extending them, let the Legislature see to it, but let it be remembered that nothing but plain English words will do it.'

" If this strict rule of construction is applicable to the powers of corporations under their charters, certainly a broader one cannot be held in the delegation by a corporation of its corporate rights and franchises in the absence of clear legislative authority. If it be true that a corporation authorized ' to run, use, and operate,' and ' to enter into leases in respect to the use, management, and working,' cannot lease its franchises to complete the road, as decided in 32 P. F. Smith, page 113, how can improvements and betterments bearing nearly the same relation to an old road that a partly constructed one does to a finished one, at least in this case, which contemplates changing the number of tracks from two to four, and changing the width of the road-bed from sixty-six feet to over one hundred ? That the absence of this power would undoubtedly operate as a hardship in many cases cannot be denied, and might even prevent the lessee of a railroad from discharging its duties to the public ; as such a construction might prevent a leased road from adopting the constantly increasing new and useful inventions applicable to railroads, e. g., in the matter of signals, switches, etc., and from accommodating itself to increasing traffic, and in many ways cripple its usefulness ; but this would seem to be within the exclusive province of the Legislature to remedy. If it be true, as contended by defendant company, that, under the acts of Assembly above referred to, a lessee has the power to exercise the right of eminent domain, then any corporation, no matter what the purposes of its creation are, provided it be authorized to contract with the other corporations, could take an assignment of such lease, and then exercise the high prerogative right of eminent domain. Had the Legislature intended that so extraordinary a power should be so handed about, they would certainly have said so in language too plain to be misunderstood. For the reasons above given, therefore, the master is of the opinion that the right to exercise the power of eminent domain does not pass to the lessee in the absence of clear statutory provision expressly authorizing it, and that the defendant company have no right to exercise this power as assignees of the lease above mentioned. The master, however, is of the opinion that

the defendant company, under its own charter of incorporation, have the right to exercise the power of eminent domain, and that this right is clearly given it under the rule of construction as laid down by Judge Black, above referred to.

"Under section first of 'An act to incorporate the Pennsylvania Company,' approved the 7th day of April, 1870, it is provided, *inter alia*, that the said company 'may purchase, receive, hold, and enjoy to them, their successors and assigns, all such lands, tenements, leasehold estates, and hereditaments, goods and chattels, securities and estates, real, personal, and mixed, of what kind and quality soever as may be necessary to erect depots, engine-houses, tracks, shops, and other purposes of the said corporation, as hereinafter defined by the second section of this act　*　　*　　*　　*　　*　　*　　and generally may do all and singular the matters and things which to them shall appertain to do for the well-being of the said corporation and the management and ordering of the affairs and business of the same.'

" Section second of said charter provides that the corporation hereby created shall have power to contract with any person or persons, firms, corporations, or any other party, however formed, existing, or that may hereafter exist, in any way that said parties, or any of them, shall have authority to do, to build, construct, maintain, or manage any work or works, public or private, which may tend or be designed to improve, increase, facilitate, or develop trade, travel, or the conveyance and transportation of freight, live stock, passengers, and any other travel by land or water, from or to any part of the United States or the territories thereof. And the said company shall also have the power and authority to supply or furnish all needful material, labor, implements, instruments, and fixtures of any and every kind whatsoever, on such terms and conditions as may be agreed upon between the parties respectively, and also to purchase, erect, construct, maintain, or conduct, in its own name and for its own benefit, or otherwise, any such works, public or private, as they may by law be authorized to do, (including also herein lines for telegraphic communication,) and to aid, coöperate, and unite with any other company, person, or firm in so doing.'

" Section third of said charter provides, *inter alia*, that said company shall have power 'to assume, become responsible for, execute, and carry out any contracts, leases,

or sub-leases made by any company, to or with any other company or companies, individuals or firms whatsoever.'

" Section fourth of said charter provides, *inter alia:* ' The said company hereby created shall also have power to enter upon and occupy the lands of individuals or of companies (on making payment therefor or giving security according to law) for the purpose of erecting, constructing, maintaining, or managing any public work, such as is provided for in the second section of this act, and to construct and erect such works thereon, and also buildings, improvements, structures, roads, or fixtures as may be necessary or convenient for the purpose of said company under the power herein granted, and to purchase, make, use, and maintain any works or improvements connected with the works of the said company, and to merge, or consolidate, or unite with the said company the improvements, property, and franchise of any other company or companies upon such terms, &c.'

" The purpose of this improvement being mainly to provide facilities for the increasing traffic of the Pittsburgh, Fort Wayne and Chicago Railway Company now operated by the defendant company, and this being one of the purposes mentioned in the second section of the charter of incorporation of the defendant company above recited and for which purpose the company is expressly authorized, under the fourth section of its charter, ' to enter upon and occupy the lands of individuals or of companies, (on making payment therefor or giving security according to law)' and the company having made provision for the payment of the land appropriated by giving bond with sureties, which bond has been approved by your Honorable Court, the master is of the opinion that the defendant company, in making this appropriation, is acting strictly within the powers delegated to it by its charter.''

The master found that the plaintiff had no standing to question the exercise of this power, under the following authorities:

" The authority to determine in any case whether it is needful to exercise this power must rest with the State itself.  Parties interested have no right to be heard on the question unless the State Constitution expressly provides for it.  Where the case is such that it is proper to delegate to individuals or to corporations the power to appropriate property, it is also competent to delegate the authority to take."  See Cooley's Constitutional Limitations, 2 Ed., pages 537 and 538, and authorities there cited ; also, Kra-

[Hespenheide's Appeal.]

mer *v.* Cleveland and Pittsburgh Railroad Company, 5 Ohio N. S., 146.

"It is solely a legislative function, and the legislative discretion is in this respect of that plenary character that not only it cannot be revised by the judiciary, but a citizen whose property is taken is not entitled to have notice and be heard as to the expediency of the appropriation." See Pierce on Railroads, page 146, and cases cited.

Plaintiff thereupon filed exceptions to the master's report, which were afterwards dismissed by the court, and a decree entered that the bill of complainant be dismissed with costs.

Plaintiff then appealed and assigned as error the decree dismissing the bill and the dismissal of the exceptions to the master's report.

*P. C. Knox* and *S. A. Johnston* for appellant.

The right of eminent domain cannot be delegated or assigned. It cannot, therefore, when conferred on a railroad corporation, be exercised without special statute provision by a lessee of a railroad or by a person employed to build it : Pierce on Railroads, 145 ; Worcester *v.* R. R. Co., 109 Mass., 103 ; St. Peter *v.* Denison, 58 N. Y., 416. See act 1st May, 1861 ; act 17th May, 1870 ; act 18th May, 1871. No corporate power exists by implication, unless indispensable to an exercise of its franchises : Penna. R. R. Co. *v.* Canal Commissioners, 21 Penna., 22.

Under the act incorporating the Pennsylvania Company, the power to take land is limited to the subjects mentioned in the second section of the act, which seem to include those calling for original corporate action, such as building, constructing, maintaining, or managing' works, &c. The act, therefore, does not give the appellee the power sought to be exercised in this case.

*Hampton & Dalzell* for appellees.

By act of 17th March, 1869, P. L., 12, there was added to the franchises of the Pittsburgh, Fort Wayne and Chicago Railroad Co., power "to straighten, widen, deepen, enlarge, and otherwise improve its line of railroad and bridges, &c., and to make new feeders."

By virtue of act of 29th March, 1859, P. L., 290, said company had power to lease, and the Pennsylvania Railroad Co. had power to become lessee: Act 23d April, 1861, P. L., 410. One of the rights, privileges, and franchises thus leased to appellee was that of widening, straightening, and improving the road. The right of eminent do-

main passes by the lease because the power to transfer corporate property is inherent at common law ; because every corporate franchise is the subject of sale and transfer except only that of being a corporation ; because the authority to lease, without passing such power, is inconsistent with the idea that a railroad is a public highway ; and because, when the Legislature authorized the leasing it, by necessary implication, conferred on the lessee all the necessary powers of lessor for the maintenance, use, and occupation of the leased property : Penna. R. R. Co. v. Sly, 15 P. F. Sm., 209.

Aside from this question, however, the Pennsylvania company has the power under its own charter for two reasons : First, because it is a railroad company, and therefore within the purview of the act of 17th March, 1869 ; second, because its charter expressly confers such power.

The State may even confer the power of eminent domain on an individual : Pierce on Railroads, 144, 146 ; Ash v. Cummings, 50 N. H., 591.

January 5, 1885, the opinion of the Court was delivered by PAXSON, J.:

It was admitted on the argument at bar that the appellees could take the appellant's land in the name of the Pittsburgh, Fort Wayne and Chicago Railroad Company. In other words, that the latter company is clothed with the power of eminent domain, and that, if this particular taking had been in the name of that company, there would have been no room for criticism. That the said company has the right of eminent domain, is not a disputed point in the case, nor could it well be. In view of this, it is difficult to see what great injury the appellant has sustained to justify him in invoking the extraordinary powers of a court of equity. Injunctions will not be granted to redress imaginary grievances. It is only where there is a great and irreparable injury being done or threatened that a chancellor will restrain.

We need not discuss the question whether the right of eminent domain, which the Pittsburgh, Fort Wayne and Chicago Railway Company admittedly possesses, passed by its charter to the Pennsylvania Railroad Company, and to its assignees, the Pennsylvania Company, for the reason that the right of eminent domain is in terms conferred upon the latter company by its charter. Under the first section of an act entitled "An act to incorporate the Pennsylvania Company," approved April 7, 1870, P.

L., 1025, it is provided, *inter alia*, that said company "may purchase, receive, hold, and enjoy to them, their successors and assigns, all such lands, tenements, leasehold estates, and hereditaments, goods and chattels soever as may be necessary to erect depots, engine-houses, tracks, shops, and other purposes of the said corporation, as hereinafter defined by the second section of this act * * * and generally may do all and singular the matters and things which to them shall appertain to do for the well-being of the said corporation and the management and ordering of the affairs and business of the same." And by the fourth section of the same act it is further provided that "the said company, hereby created, shall also have power to enter and occupy the lands of individuals or of companies (on making payment therefor or giving security according to law) for the purpose of erecting, constructing, maintaining, or managing any public work, such as is provided for in the second section of this act, and to construct and erect such works thereon as also buildings, improvements, structures, roads, or fixtures, as may be necessary or convenient for the purpose of said company under the power herein granted, and to purchase, make, use, and maintain any works or improvements connected with the works of the said company, and to merge or consolidate or unite with the said company the improvements, property, and franchise of any other company or companies upon such terms," &c., &c.

In view of this clear grant of power by the Legislature, any further discussion of the case is unnecessary.

The decree is affirmed and the appeal dismissed at the costs of the appellant.